UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT


**GARY JACOBS,**
    **- Plaintiff**

    **v.**                              **CIVIL NO.  03:08-CV-0868 (CFD) (TPS)**

**CONNECTICUT COMMUNITY**
**TECHNICAL COLLEGES**
    **- Defendant**


<u>**Ruling on Motions to Quash Subpoenas**</u>

The plaintiff, Gary Jacobs, moves to quash the subpoenas duces tecum issued to his mental health care providers by the defendant, Connecticut Community Technical Colleges. (Dkts. ## 24 and 25). For the reasons stated herein, the plaintiff's motions are **DENIED without prejudice**.

**I.  Background**

In his complaint, the plaintiff alleges that the defendant employer discriminated against him on the basis of his sex and sexual orientation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* (Dkt. #1, Complaint, ¶ 1). The plaintiff further alleges that as a result of such discrimination, he "has suffered and continues to suffer economic losses and emotional distress." (<u>Id</u>. ¶ 9).

After the plaintiff commenced the action, the defendant moved

1

for a protective order, which the court issued on January 30, 2009. (Dkt. # 23). Pursuant to the protective order, "all documents and information regarding medical and health records pertaining to the plaintiff . . . shall be considered confidential and shall not be further disclosed except" in compliance with certain limitations. Id.

On February 14, 2009, the plaintiff moved to quash the subpoenas duces tecum that the defendant issued to psychiatrist Bruce S. Rothschild, M.D., licensed social worker Naomi Neuwirth, L.C.S.W., and licensed marriage and family therapist Elliot M. Strick, L.M.F.T. (Dkts. ## 24, 25). The subpoenas seek disclosure of the plaintiff's psychiatric and mental health records. In support of his motions to quash, the plaintiff argues that "the subpoenas attempt to compel the disclosure of privileged psychiatrist-patient records without the consent of the patient." (Dkt. # 24, Pl. Motion to Quash, 1). The plaintiff further argues that disclosure of the psychiatric medical records is unwarranted because "the plaintiff's psychiatric condition is not part of the litigation." (Dkt. # 24, Pl. Mem., 2).

The defendant argues that it properly complied with the requirements of the Health Insurance Portability and Accountability Act of 1996 ("HIPPA") when it issued the subpoenas along with an attached copy of the protective order issued by the court. (Dkt. # 26, Def. Mem., 1). The defendant further argues that it is

entitled to the plaintiff's psychiatric medical records because the plaintiff waived the psychotherapist-patient privilege by putting his mental state at issue.  (Id. at 4).

**II. Discussion**

**A.   Plaintiff's Standing to Move to Quash the Subpoenas**

As an initial matter, the court must consider whether the plaintiff has standing to move to quash the subpoenas served on his mental health care providers.  Ordinarily, a party does not have standing to move to quash a subpoena served on a third party.  Rather, only the person or entity to whom a subpoena is directed has standing to file a motion to quash.  See e.g., Chemical Bank v. Dana, 149 F.R.D. 11, 13 (D. Conn. 1993); see also, 9A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2459, at 41 (2d ed. 1995).

However, Federal Rules of Civil Procedure 45(c)(3)(A) states that, "[o]n timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it . . . (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies."  Here, the plaintiff clearly has a personal privacy right and privilege with respect to the information contained in his psychiatric and mental health records.  Hence, the plaintiff's interest in keeping this information gives him standing under Rule 45(c)(3)(A) to challenge the subpoena.

**B.   Standard of Review**

Parties may obtain discovery regarding any non-privileged matter that is relevant to the subject matter involved in the pending litigation. Fed. R. Civ. P. 26(b)(1). The information sought does not need to be admissible at trial; it need only be reasonably calculated to lead to the discovery of admissible evidence. Id. "Relevance" under Federal Rules of Civil Procedure 26(b)(1) has been defined broadly to include "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L. Ed. 2d 253 (1978). The party resisting discovery bears the burden of showing why a discovery request should be denied. Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975).

**C.   Waiver of the Psychotherapist-Patient Privilege**

In Jaffee v. Redmond, the Supreme Court held that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." 518 U.S. 1, 15, 116 S. Ct. 1923, 135 L.Ed. 2d 337 (1996). The privilege protects communications with licensed psychiatrists, psychologists, and social workers. Id. at 15. It also protects against compelled disclosure of notes made during the course of treatment. Id. at 18. "[R]ooted in the imperative need for confidence and trust" between the patient and the psychotherapist, the privilege is designed to

4

avoid deterring people from seeking treatment for fear that they will suffer a disadvantage in later litigation. Id. at 11.

Despite the strict protection it affords, the psychotherapist-patient privilege may be waived. Id. at 15, n.14. Waiver occurs when a plaintiff puts his or her mental condition at issue in the case. See Green v. St. Vincent's Med. Ctr., 252 F.R.D. 125, 127 (D. Conn. 2008) (collecting cases). "[W]aiver may be implied in circumstances where it is called for in the interests of fairness," including "when the party attempts to use the privilege both as 'a shield and a sword.'" Sims v. Blot, 534 F.3d 117, 132 (2d. Cir. 2008). "In other words, a party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim . . . and then shield the underlying communications from scrutiny by the opposing party." Id. Thus, when a party puts his or her mental state at issue, his or her opponent has a right to conduct an inquiry into communications between psychotherapist and patient.

Until recently, two divergent views existed within the Second Circuit "concerning the circumstances necessary to effect a waiver of the psychotherapist privilege." EEOC v. Nichols Gas & Oil, Inc., 256 F.R.D. 114, 120-21 (W.D.N.Y. 2009). Under the "broad" view, "the mere allegation of emotional distress was viewed as sufficient to justify discovery into that party's psychological records to determine whether events other than the challenged conduct may have

5

caused or exacerbated the party's distress." Id. at 120.

In contrast, under the "narrow" view, a plaintiff is not deemed to have waived the privilege by alleging only "garden variety" emotional distress. Id. Courts using the narrow approach "must distinguish between garden variety claims and claims for more 'severe' emotional distress, such as those involving a diagnoses of a specific psychiatric disorder." Id. at 121. "Garden variety claims refer to claims for 'compensation for nothing more than the distress that any healthy, well-adjusted person would likely feel as a result of being so victimized.'" Id. (citation omitted).

In Sims, the Second Circuit adopted the narrow view of waiver. The issue in Sims, similar to that in this case, was whether the plaintiff, who had asserted a civil rights claim, had waived the psychotherapist-patient privilege by virtue of his allegations in the pleadings or his responses to discovery requests. Sims, 534 F.3d at 133. The court held that the plaintiff had not waived the privilege because he had asserted no more than a garden variety claim for emotional distress, that is, a claim of emotional injury for damages ordinarily associated with a conventional claim for pain and suffering. Id. at 120, 140-41.

Although the plaintiff in Sims had testified at a deposition regarding the anxiety that resulted from an alleged assault on him by prison guards, his attorney later expressly informed the court that the plaintiff did not intend to pursue any claims beyond mere
6

"garden variety" emotional distress. Id. at 134-41. Specifically, the plaintiff explicitly abandoned "any claim to damages for mental injury or any non-garden-variety emotional injury." Id. at 142. In addition, the plaintiff expressly agreed not to offer privileged communications or other evidence regarding his psychiatric condition in support of his civil claim. Id. at 125-26. On the basis of those disavowals, coupled with the absence of any allegation of emotional injury in his pleadings, the court concluded that the plaintiff had not waived the psychotherapist-patient privilege.

Here, although the plaintiff alleges that he "has suffered and continues to suffer economic losses and emotional distress" as a result of the discrimination, (Dkt. # 1, Complaint, ¶ 9), he has not plead a separate cause of action for emotional distress. *Cf.* Green, 252 F.R.D. at 129 (finding waiver where plaintiff claimed negligent and intentional infliction of emotional distress). Accordingly, if the court were to confine its analysis to the pleadings alone it would conclude, consistent with the narrow approach adopted by Sims, that the plaintiff had not waived the privilege because his complaint asserts no more than a garden variety claim for emotional distress.

However, in response to the defendant's interrogatories,[1] the

---

[1] Unlike the plaintiff in Sims, who was not represented by counsel during the deposition at which he discussed his emotional state, the plaintiff in this case was represented by counsel when he made the disclosures.

7

plaintiff identifies Bruce S. Rothschild, M.D., Naomi Neurwirth, L.C.S.W., and Elliot Strick, M.A., L.M.F.T., as physicians, psychologists, or social workers from whom he "received medical (including psychiatric) treatment . . . for the injuries alleged in the Complaint." (Dkt. # 26; Def. Mem., Exh. 1, No. 9). The responses also state that Strick treated him for "depression and anxiety caused by the plaintiff's work environment." (Id.) The responses further indicate that "[p]rior to the events relevant to this complaint, the plaintiff has not suffered from any other physical or mental disease, disability or defect," that the plaintiff has not recovered from the injuries alleged in the complaint, and "presently suffers from the following conditions; insomnia, depression . . . and an inability to focus and concentrate." (Id. at Nos. 10, 11).

In addition, in response to the defendant's requests for production of documents, the plaintiff disclosed letters from two of his treating psychotherapists that were addressed to his attorney. (Dkt. # 26; Def. Mem., Exh. 1). The first letter, from Strick, states that the plaintiff "was diagnosed as having a Major Depressive Disorder accompanied by symptoms of Anxiety. (Id.) A primary source of [the plaintiff's] depression and anxiety was from his job, which he reported was a major source of stress as a result of discrimination he had been experiencing there." (Id.)

The second letter, from Neuwirth, states that the plaintiff was

being treated "for depression mainly due to his work situation" and that the treatment "focus[ed] on the best way to handle his work situation" and on developing "coping skills in a difficult work situation." (Id.)

Despite these responses and disclosures, the plaintiff argues that his "psychiatric condition is not part of the litigation" and that his "claim is nothing more than generalized emotional distress damages. . . ." (Dkt. # 24, Pl. Mem. at 2). Although the plaintiff in Sims was able to avoid waiver of the psychotherapist-patient privilege by expressly abandoning any claim to non-garden-variety emotional injury and by expressly agreeing not to offer privileged communications or other evidence of his psychiatric condition in support of his claim, here, the plaintiff's disavowal falls far short.

The court concludes that the plaintiff has placed his emotional state in issue through his responses to the defendant's interrogatories and by disclosing the two letters. Significantly, the plaintiff's interrogatory responses and disclosed letters identify diagnoses of specific psychiatric disorders. It is precisely such diagnoses which distinguish a claim for severe emotional distress from a mere garden variety claim. See Nichols Gas & Oil, Inc., 256 F.R.D. at 120-21.

In summary, the plaintiff cannot be allowed to "partially disclose privileged communications or affirmatively rely on

9

privileged communications to support [his] claim . . . and then shield the underlying communications from scrutiny by the opposing party." Sims, 534 F.3d at 132.  In other words, the plaintiff may not use the privileged information as a sword and then rely on the privilege itself as a shield.  Accordingly, the court concludes that the plaintiff has waived the psychotherapist-patient privilege.

**D.   Defendant's Compliance with HIPPA Requirements**

Having concluded that the defendant is entitled to conduct an inquiry into communications between the plaintiff and his psychotherapists, the court must now address whether the defendant complied with the provisions of HIPPA when it issued the subpoenas duces tecum to the psychotherapists along with an attached copy of the protective order issued by the court.

Under HIPPA and the regulations promulgated thereunder, disclosure of patient records in legal proceedings is permitted if ordered by the court *or* if made pursuant to a qualified protective order.  See 45 C.F.R. § 164.512(e)(1).  Indeed, discovery requests issued to non-parties properly seek protected health information as long as the requests are made under a "protective order that prohibits the use of the protected information outside the litigation process and requires the return or destruction of the records, including all copies made, at the conclusion of the litigation." State Farm Mut. Auto. Ins. Co. v. Accurate Med., P.C., CV 2007-0051 (ENV) (MDG), 2007 U.S. Dist. LEXIS 34410 at *4

(E.D.N.Y. 2007); see also, 45 C.F.R. § 164.512(e)(1)(v).

Here, the protective order issued by the court under which the subpoenas duces tecum were issued contains all necessary restrictions regarding disclosure of the plaintiff's protected medical information. Accordingly, the court concludes that the defendant has properly complied with the requirements of HIPPA.

### III. Conclusion

For the foregoing reasons, the plaintiff's motions to quash the subpoenas duces tecum are **DENIED without prejudice**. [Dkts. ## 24, 25]. The plaintiff may renew the motions upon submission of a statement in which he explicitly disavows any claim to non-garden-variety emotional injury and expressly agrees not to offer any privileged information or other evidence regarding his psychiatric condition in support of his claim.

This is a discovery ruling and order reviewable pursuant to the "clearly erroneous" standard of review.  28 U.S.C. 636(b)(1)(A); Fed. R. Civ. P. 6(a),(e) and 72(a); and Rule 2 of the Local Rules for U.S. Magistrate Judges.  As such, it is an order of the court. See 28 U.S.C. § 636(b) (written objections to ruling must be filed within ten days after service of same).

**IT IS SO ORDERED.**

**Dated at Hartford, Connecticut this 15th day of July, 2009.**

                                            /s/ Thomas P. Smith
                                            **Thomas P. Smith**
                                            **United States Magistrate Judge**